UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOGDAN KRYNICKI, | * |
| | * |
| Petitioner, | * |
| | * |
| v. | *   Civil Action No. 17-cv-12314-IT |
| | * |
| YOLANDA SMITH, Superintendent of | * |
| Suffolk County House of Correction, | * |
| | * |
| Respondent. | * |

ORDER

August 7, 2018

TALWANI, D.J.

Currently pending before this court is Petitioner Bogdan Krynicki's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition") [#1] and Respondent Yolanda Smith's Motion to Dismiss Petitioner's Habeas Petition ("Motion to Dismiss") [#11].

Immigration and Customs Enforcement ("ICE") took Petitioner into custody on August 9, 2016, and Petitioner has remained in ICE detention since that date. Petition ¶ 13. On October 26, 2016, an Immigration Judge ordered Petitioner removed to Poland. Id. ¶ 11; Petition Ex. 1 [#1-1]. Petitioner filed an appeal with the Board of Immigration Appeals, which denied the appeal on February 28, 2017, rendering Petitioner's order of removal final. This triggered the start of the ninety-day statutory "removal period" provided in 8 U.S.C. § 1231(a)(1)(A).

In Zadvydas v. Davis, the Supreme Court recognized that not all removals could be accomplished during the removal period, and that post-final-order, pre-removal detention is presumptively reasonable for up to six months. 533 U.S. 678, 701 (2001). After this six-month period, a petitioner may seek release from custody by providing "good reason to believe that

there is no significant likelihood of removal in the reasonably foreseeable future. . . ." Id. The government must respond with "evidence sufficient to rebut that showing." Id. This burden increases as the period of confinement increases. Id.

On November 22, 2017, Petitioner filed his *pro se* Petition [#1], asserting that his continued detention was in violation of Zadvydas. Respondent filed a Motion to Dismiss [#11], which asserted that Petitioner's removal was reasonably foreseeable. Respondent contended that the delay in removal was caused by the Polish government's delay in processing travel documents ("TDs") necessary for Petitioner's return to Poland. See Mot. Dismiss 3 [#12]. Respondent relied on a December 11, 2017, declaration by Julia Sarich, an employee in ICE's Enforcement and Removal Operations ("ERO") Removal and International Operations ("RIO") office, who asserted that "[o]n November 27, 2017, ERO RIO confirmed with the Polish Embassy Legal Department that [Petitioner's application for citizenship] is currently being adjudicated in order to determine citizenship." Sarich Decl. ¶ 14 [#12-1]. Sarich stated further, "I have no reason to believe that the Polish Embassy will not issue a TD for Krynicki in the near future." Id. ¶ 15.

Petitioner opposed the Motion to Dismiss both *pro se*, and after counsel was appointed, through counsel. On June 5, 2018, Respondent filed a Reply to Petitioner's Opposition to Motion to Dismiss [#25], which asserted a new basis for Petitioner's continued detention: Respondent advised the court for the first time that Petitioner had allegedly refused to complete a Polish citizenship document requested by the Polish Embassy. Aldean Beaumont, as Assistant Field Office Director at the Hartford, Connecticut ICE office, declared, based on his review of records, that "[o]n January 17, 2018, Krynicki was instructed by an ICE officer to complete a Polish citizenship application that was requested by the Embassy of Poland in Washington, D.C.

Krynicki refused to complete the required forms." Beaumont Decl. ¶ 8 [#25-1]. Beaumont further declared that Krynicki was provided a Notice of Failure to Comply dated February 15, 2018. Id. ¶ 9. Beaumont provided no details regarding Petitioner's alleged refusal to cooperate and a copy of the purported Notice of Failure to Comply still has not been provided to the court. Nor was this alleged refusal to cooperate brought to the court's attention prior to June 2018, despite Respondent's December 2017 representation that Petitioner's removal was likely to occur in the near future. Respondent's Reply further represented that "[b]y an email received today, undersigned counsel was informed that Petitioner again refused to cooperate and sign necessary documents on May 31, 2018." Reply to Opp'n to Mot. Dismiss 1 [#25]. Respondent's counsel did not support this assertion with any detailed information or a supporting affidavit from Respondent.

     On June 6, 2018, the court held a hearing on Respondent's Motion to Dismiss. The court informed Respondent that if Respondent sought to show that Petitioner was causing the delay in his removal to Poland by refusing to sign necessary paperwork, Respondent needed to submit affidavits or other evidence, supported by personal knowledge, identifying the specific documents that Petitioner was refusing to sign and providing specific details regarding Petitioner's refusal to cooperate in the removal process. The court allowed a brief continuance to allow counsel to determine whether the facts were disputed and for the court to schedule an evidentiary hearing if deemed necessary.

     A joint Status Report [#27] filed June 20, 2018, states that ICE informed Respondent's counsel that Petitioner was initially asked to complete an application for Polish citizenship, and that "months later, the Polish government informed U.S. authorities at the ICE that Petitioner should have submitted a different type of application, one designated as a 'Declaration of

Citizenship.'" Respondent's counsel further stated that "Petitioner refused to sign this application in November 2017." Id. For this latter proposition, Respondent's counsel cited to the Reply and Beaumont Declaration, although those documents provided a January 17, 2018, date for Petitioner's purported refusal to sign. In the status report, Respondent further asserted that "ICE has informed government counsel that on May 24, 2018, Petitioner was asked to sign, in front of a notary, copies of his birth certificate, marriage certificate and results of a blood test (possibly done in connection with his marriage). These documents did not have a separate form on them, or attached to them, for Petitioner to certify their accuracy. Petitioner did not sign them in 2018." Id. None of the assertions in the status report regarding Petitioner's refusal to cooperate were supported by an affidavit based on personal knowledge.

In his Response to Government's Reply in Opposition [#32], filed June 29, 2018, Petitioner disputed that he was refusing to sign any documents necessary to his removal, and highlighted that Respondent had failed to submit sufficient evidence showing his noncooperation and had failed to explain which documents still required a signature from Petitioner.

In light of the parties' dispute regarding whether Petitioner was refusing to sign documents necessary to his removal to Poland and the discrepant dates underlying ICE's account of Petitioner's alleged refusal to cooperate, the court scheduled an evidentiary hearing, which was held on August 14, 2018, with Petitioner present. At that hearing, Respondent failed to introduce any evidence showing that Petitioner has refused to cooperate with ICE. Moreover, despite giving counsel a recess to find such documents, Respondent failed to produce the form that it alleges Petitioner is refusing to sign. Petitioner's counsel again represented at the hearing that Petitioner has no objection to signing documents necessary to his removal.

At this juncture, Petitioner has been in ICE detention for more than seventeen months following the issuance of the final order of removal, more than fourteen months past the ninety-day post-final-order removal period authorized by 8 U.S.C. § 1231(a)(1)(A), more than eleven months past the presumptively reasonable post-removal-order detention period recognized in Zadvydas, and almost eight months since Respondent sought to dismiss the habeas petition on the ground of a significant likelihood of Petitioner's removal in the reasonably foreseeable future. Petitioner has provided "a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701. Respondent has failed to meet its burden to rebut that showing. Therefore, this court holds "continued detention unreasonable and no longer authorized by statute." Id. at 700. The court notes further that to the extent Respondent is concerned that documents may still need to be filed, the appropriate method to accomplish that goal would be to include as a condition of release that Petitioner shall comply with all requests from ICE to complete paperwork necessary for his removal to Poland, rather than using detention for this purpose. Petitioner is entitled to a bond hearing before an Immigration Judge, at which Petitioner's "release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances. . . ." Id.

Accordingly, the Motion to Dismiss Petitioner's Habeas Petition [#11] is DENIED, and the Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [#1] is ALLOWED. An Immigration Judge shall hold a bond hearing for Petitioner no later than one week from the date of this order. The court retains jurisdiction over this matter and directs the parties to report on the outcome of that hearing within one week from the date of the hearing.

IT IS SO ORDERED

August 7, 2018                                    /s/ Indira Talwani
                                                  United States District Judge